**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| DR. RAYNARD E. WASHINGTON, in his official capacity as Commissioner of the NEW JERSEY DEPARTMENT OF HEALTH, <br><br> Plaintiff, <br><br> v. <br><br> THE GEO GROUP, INC. <br><br> Defendant. | Hon. Jamel K. Semper, U.S.D.J. <br><br><br> Civil Action No. 2:26-cv-06466-JKS-LDW |

**STATEMENT OF INTEREST BY THE UNITED STATES**

Per the Court's request, the United States respectfully submits this Statement of Interest[1] to address the aggressive and legally unjustified effort by the State of New Jersey—through its Attorney General Jennifer Davenport, the New Jersey Department of Health (NJDOH), and the Plaintiff NJDOH Commissioner Dr. Raynard E. Washington—to yet again interfere with federal immigration enforcement. The United States has a strong interest in countering state and local efforts to interfere with or disrupt federal operations and contracts and to harass federal contractors; in the proper application of the Constitution and its Supremacy Clause; and in the foundational principles that protect the federal government from unlawful state and local interference—whether direct or indirect. Each of these interests is implicated here.

---

[1] Congress has authorized the Attorney General to send "any officer of the Department of Justice . . . to any . . . district in the United States to attend to the interests of the United States in a suit pending in a court of the United States." 28 U.S.C. § 517; *see id.* § 518 ("When the Attorney General considers it in the interests of the United States, he may personally contact and argue any case in a court of the United States in which the United States is interested, or he may direct the Solicitor General or any office of the Department of Justice to do so."). These statutes provide a mechanism for the United States to submit its view in cases in which the United States is not a party. *See, e.g.*, *Blondin v. Dubois*, 78 F. Supp. 2d 283, 288 n.4 (S.D.N.Y. 2000), and are not intended to "subject[] it to the general jurisdiction" of a court, *Flatow v. Islamic Republic of Iran*, 305 F.3d 1249, 1252-53 & n.5 (D.C. Cir. 2002).

1

## I.  INTRODUCTION

This case represents just the latest attack by state and local officials on the Delaney Hall facility located in Newark, New Jersey. Defendant GEO Group, Inc. ("GEO") is a federal contractor that was awarded a contract providing United States Immigration and Customs Enforcement ("ICE") with secure residential support services and the exclusive use of Delaney Hall. Delaney Hall is an approximately 1,196-bed facility that is intended to house aliens ICE has arrested on probable cause to believe that they are removable from the United States under federal immigration law. Through its contracts, ICE already requires that GEO adhere to national detention standards and operate in accordance with federal specifications, including ICE's *exclusive* control over all access to secure portions of the facility. In this case, the New Jersey Health Commissioner seeks "an Order directing GEO to permit [him] and his delegees, including the New Jersey Department of Health, full access to the facility known as Delaney Hall for purposes of inspection" pursuant to two state statutes. Dkt. 1-1 at 16 (Prayer for Relief). That relief is improper both because it is directed at an entity without authority to provide it and it subverts federal operations.

From the moment GEO announced receipt of the ICE contract, New Jersey and local officials have sought to prevent its reopening, threatening to "padlock the building if necessary" to block its opening. *See* Steve Strunsky, *'We are all immigrants': Newark rallies against massive new ICE detention center*, NJ.com (Mar. 11, 2025 7:45 PM, *updated* Mar. 13, 2025 7:57 AM), https://tinyurl.com/mr29pr94. Just last month, Governor Sherrill admitted "I have long opposed private detention facilities and advocated against them. I will continue to call for the closure of Delaney Hall . . . ." Statement by Governor Sherrill on Delaney Hall (May 24, 2026), https://www.nj.gov/governor/news/2026/20260524a.shtml. The same day that this lawsuit was

filed, Newark Mayor Ras Baraka revealed that the true purpose of this litigation is "to have Delaney Hall shuttered, saying the facility 'has no real grounds to be open and should be closed.'" *Newark mayor calls for judge to shutter Delany Hall ICE facility*, Courthouse News Serv. (June 2, 2026), https://tinyurl.com/f3hbeb7t.[2]

Indeed, the Third Circuit has recognized—in a case about one of the State's earlier attempts to shut down the facility—that New Jersey "does not want private immigration-detention centers," like this one. *CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315, 319 (3d Cir. 2025). The Third Circuit also has recognized that is not New Jersey's call to make. Whether through a statutory ban like the one at issue in *CoreCivic* or interference through enforcement of other state laws, the State may not "in substance regulate the federal government," "tell[ the federal government] how to carry out a core function," "substantially interfere[] with federal immigration policy," or attempt to "dictate the manner in which the federal [immigration] function is carried out." *Id.* at 326, 327, 329.[3]

Whether and to what extent state officials may be permitted access to inspect this federally controlled facility is a federal prerogative. And this Court should not be drawn in to superintending that prerogative, especially through a suit against the wrong party. Accordingly, the State's requested relief should be denied.

---

[2] Delaney Hall previously housed aliens from 2011-2017, during which time New Jersey and Newark notably did *not* undertake to disrupt its operations at all costs.

[3] Such state interference with federal functions and facilities is not just unlawful, it is highly incongruous here given New Jersey's recent unlawful efforts to categorically bar federal officers from entering certain areas of state-owned property without a judicial warrant. *See United States v. New Jersey*, No. 3:26-cv-01770 (D.N.J.) (challenging Executive Order No. 12).

3

## II. DISCUSSION

This controversy arose after GEO granted Plaintiff access to inspect the Delaney Hall facility's food service areas but stated that it lacked the authority to also allow access to secure areas, such as the medical unit, toileting and shower facilities, ventilation and HVAC locations, and inmate sleeping areas. GEO lacks the authority to grant such access because ICE—*not* GEO— has exclusive use of the secure portions of the facility. All requests for access to the secure portions of Delaney Hall must be pre-approved by ICE.

Instead of seeking authorization from ICE to inspect the secure portions of Delaney Hall, the State has elected to target a federal contractor, GEO, which lacks the authority to grant access without federal approval. This Court should not permit state officials to skip over federal authorization by harassing and then suing a federal contractor.

The United States has had discussions with the State and is open to considering reasonable and appropriate inspection of the Delaney Hall facility if the State so requests. Rather than filing suit against GEO and issuing a press release, the State should have continued engaging with ICE to discuss specific legal authority under which the inspection is to be conducted; specific dates and timeframes when inspection is to be conducted; locations within the facility requested to be inspected; names, titles, and credentials of individuals proposed to conduct the inspection; and acknowledgment that any inspectors will abide by facility rules and procedures—as GEO has repeatedly told Plaintiff. The State's premature resort to legal action preempts this negotiation process and risks wasting significant judicial, party, and now non-party federal resources.

These facts demonstrate that New Jersey lacks standing in this case. Whatever their alleged injury, it is not traceable to GEO nor is it redressable by relief against GEO for the simple reason that ICE, not GEO, exclusively controls access to the secure portions of the facility the State seeks

4

to access. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Therefore, Plaintiff's motion should be denied and this action should be dismissed.

In any event, the action also fails on the merits. Standing in the way of the State's requested relief (an order mandating access to any or all of the federally controlled premises) is the Third Circuit's unequivocal holding that "a state cannot control the federal government" such as by "interfere[ing] with the federal government's core power to enforce immigration laws." *CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315, 319 (3d Cir. 2025). That principle extends to "contractors" whenever the state regulation "substantially interfere[s] with [the federal government's] activities." *Id.* at 325 (quoting *HMO of N.J., Inc. v. Whitman*, 72 F.3d 1123, 1132 (3d Cir. 1995)). Thus, a state law that places a "mandate on the federal government," including indirectly through its contractors, violates "'the very essence of supremacy.'" *Id.* at 321 (quoting *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427 (1819)). The Third Circuit has long recognized this principle in the context of state and local "building restrictions or ordinances." *United States v. City of Chester*, 144 F.2d 415, 421 (3d Cir. 1944). "A state statute . . . even if based on the valid police powers of a State, must yield in case of direct conflict with the exercise by the Government of the United States of any power it possesses under the Constitution." *Id.* And New Jersey "violate[s] intergovernmental immunity if they 'impose a burden on the national government tantamount to an interference … with the … performance of its functions," *CoreCivic, Inc.*, 145 F.4th at 323 (quoting *Graves v. New York ex rel. O'Keefe*, 306 U.S. 466, 481 (1939)). Whether and to what extent the federal government permits inspections of the facility is not a matter open to litigation based on state law, especially in a case against a contractor. Accordingly, this latest attempt to "subvert federal operations" "trigger[s] immunity" and must be denied. *Id.*

There are further barriers to relief here still:

5

The State's demand here also appears to be discriminatory, in that it "single[s] out" the federal government and its contractor for less favorable treatment on some basis related to their federal status. *Washington v. United States*, 460 U.S. 536, 546 (1983). New Jersey has targeted a facility that its political leaders have demonstrated the State "does not want" to remain open, *CoreCivic, Inc.*, 145 F.4th at 319, based on scant and politically motivated bases. The federal government is immune from such discrimination.

Intergovernmental immunity is more than sufficient to resolve the merits against New Jersey here, but the State's enforcement action also is preempted many times over. Numerous federal statutes and policies govern control and supervision of federal immigration detention facilities as well as contracts for the same. *E.g.*, 6 U.S.C. § 112(b)(2); 8 U.S.C. § 1231(g); 18 U.S.C. § 4013 note; 28 U.S.C. § 530C(a)(4); *see* 48 C.F.R. § 3017.204.90 ("The ICE Head of the Contracting Activity (HCA), without delegation, may enter into contracts of up to fifteen years' duration for detention or incarceration space or facilities, including related services."); ICE National Detention Standards 2025, § 1.1, Environmental Health and Safety, II., I. General Environmental Health Guidelines ("Environmental health conditions will be maintained at a level that meets recognized standards of hygiene. Recognized standards include those from the Occupational Safety and Health Administration (OSHA), the Environmental Protection Agency (EPA), the Food and Drug Administration (FDA), the National Fire Protection Association (including the Life Safety Code (NFPA 101)[)], and the Centers for Disease Control and Prevention (CDC). The facility, in consultation with the [Health Service Administrator] HSA and the Environmental Health and Safety officer or equivalent, shall establish a housekeeping plan to ensure a high level of environmental sanitation. [sic] and shall consult with the HSA or equivalent in designing this program"), available at https://www.ice.gov/doclib/detention-standards/2025/

6

nds2025.pdf [https://perma.cc/A8MW-VSCE]. Inspections of those facilities are the responsibility of the ICE Office of Detention Oversight under the Office of Professional Responsibility. https://www.ice.gov/opr. And this detention occurs within the broader (and also exclusively federal) context of immigration enforcement. *See, e.g.*, 8 U.S.C. §§ 1225, 1226, 1231. These authorities establish such pervasive federal regulation and such dominant federal interests as to establish field preemption. *See GEO Grp., Inc. v. Newsom*, 50 F.4th 745, 756–57 (9th Cir. 2022) (en banc). And New Jersey's unabashed efforts to disrupt "the full purposes and objectives of Congress" in establishing these crucial authorities constitute obstacle preemption to boot. *Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 163 (2016).

On the remaining preliminary injunction factors, New Jersey's harm is "self-inflicted" because it improperly sought relief from a party without authority to provide it. *Caplan v. Fellheimer*, 68 F.3d 828, 839 (3d Cir. 1995). And lastly, permitting interference with and disruption of federal immigration policy by targeting detention facilities would disserve the public interest. Doing so risks "undermining ICE operations 'nationwide'" and "compromising national security." *CoreCivic, Inc.*, 145 F.4th at 327–28. As the Court is aware, Delaney Hall is one of two immigration detention facilities in New Jersey. Given that Judges of this District routinely order ICE not to transfer immigration detainees out of the State, it is crucial that its operations not be disrupted, especially by unlawful and politicized efforts to "subvert federal operations." *Id.* at 324.

### III. CONCLUSION

At the end of the day, New Jersey's rush to litigate (both in court and in the media) the question of access to Delaney Hall belies its prioritization of politics over process. Its motion should be denied and this action should be dismissed.

DATED: June 12, 2026                          Respectfully Submitted,


BRETT A. SHUMATE                              /s/ Robert O. Lindefjeld
Assistant Attorney General                    Assistant Director
Civil Division                                U.S. Department of Justice, Civil Division
                                              Enforcement & Affirmative Litigation
                                              Branch
CHARLES E.T. ROBERTS                          P.O. Box 386
Counsel to the Assistant Attorney General     Washington, DC 20044-0386
                                              Telephone: (202) 451-7488
                                              Email: robert.o.lindefjeld@usdoj.gov

                                              *Attorneys for the United States of America*

8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 12, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

<u>/s/ Robert O. Lindefjeld</u>
Assistant Director
U.S. Department of Justice, Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, DC 20044-0386
Telephone: (202) 451-7488
Email: robert.o.lindefjeld@usdoj.gov

9