# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

------------------------------------------------- x

DR. RAYNARD E. WASHINGTON, in his official capacity as Commissioner of the NEW JERSEY DEPARTMENT OF HEALTH,

  Plaintiff,

  - against -

THE GEO GROUP, INC.,

  Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

No. 2:26-cv-06466-JKS-LDW

Motion Day:  July 6, 2026

------------------------------------------------- x

## GEO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

**DAVIS WRIGHT TREMAINE LLP**
Geoffrey S. Brounell
1251 Avenue of the Americas, 42nd Floor
New York, New York 10020
Tel:  (212) 489-8230
geoffreybrounell@dwt.com

*Attorneys for The GEO Group, Inc.*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................1

II.   BACKGROUND ...................................................................................3

    A.    The Federal Government Controls Immigration Detention And Establishes National Uniform Standards ................................................3

    B.    The ICE Contract Awarded For The Delaney Hall Facility .................4

    C.    The 2025 Politicization Of Delaney Hall..............................................8

    D.    The 2026 Politicization Of Delaney Hall..............................................9

    E.    ICE—Not GEO—Controls Access To Delaney Hall .........................11

III.  ARGUMENT........................................................................................13

    A.    The Court Should Dismiss This Action Pursuant To Rule 12(b)(1).................................................................................................13

    B.    In the Alternative, The Court Should Find ICE Is A Necessary Party To This Action And Dismiss Pursuant to Rules 12(b)(7) And Rule 19.................................................................................................20

        1.    ICE Is a Necessary Party Under Rule 19(a)(1)(A) & (B).........23

        a.    Rule 19(a)(1)(A): Complete Relief Is Not Possible .................23

        b.    Rule 19(a)(1)(B): ICE Claims an Interest in Delaney Hall Operations and Access..........................................................25

            (1)    Proceeding Without ICE Will Impair and Impede ICE's Interests .........................................30

            (2)    Proceeding Without ICE Would Subject GEO to Substantial Risk of Inconsistent Obligations ...31

        2.    After Concluding That ICE Is a Necessary Party, the Court Should Dismiss .................................................................32

i

      a.     Joinder Is Not Feasible Because ICE Is Immune ......................32

      b.     This Action Must Be Dismissed ...............................................34

IV.   CONCLUSION.......................................................................................38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona v. United States*,
   567 U.S. 387 (2012).................................................................................27, 30

*Bagal v. Rutgers*,
   No. CV 24-11440 (ZNQ) (JBD), 2025 WL 2910186
   (D.N.J. Oct. 14, 2025)....................................................................................14

*Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*,
   844 F.2d 1050 (3d Cir. 1988) ....................................................................24, 38

*Bhatt v. Comm'r of NJDOL*,
   No. 3:16-CV-5654-BRM-DEA, 2018 WL 623667 (D.N.J. Jan. 30, 2018) .......20

*City of L.A. v. Lyons*,
   461 U.S. 95 (1983)..........................................................................................15

*City of Newark v. GEO Re-Entry Group, LLC*,
   Case No. 2:25-cv-02225-JKS-LDW...................................................................9

*CNA v. United States*,
   535 F.3d 132 (3d Cir. 2008) ............................................................................13

*CoreCivic, Inc. v. Governor of N.J.*,
   145 F.4th 315 (3d Cir. 2025) ......................................................................26, 31

*CoreCivic, Inc. v. Murphy*,
   690 F. Supp. 3d 467 (D.N.J. 2023)...................................................................27

*CoreCivic, Inc. v. Murphy*,
   Case No. 3:23-cv-00967-RK-TJB (D.N.J. 2023)...............................................31

*Cornerstone Bldg. Brands, Inc. v. Teamsters Loc. 97 of New Jersey*,
   No. 2:25-CV-13821-WJM-CF, 2025 WL 3687894
   (D.N.J. Dec. 19, 2025)....................................................................................14

*Davis v. Wells Fargo*,
   824 F.3d 333 (3d Cir. 2016) .......................................................................13, 14

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*,
  276 F.3d 1150 (9th Cir. 2002) ...............................................................................32

*Dep't of Army v. Blue Fox, Inc.*,
  525 U.S. 255 (1999)...............................................................................................34

*Develcom Funding, LLC v. Am. Atl. Co.*,
  No. 09–1839(RMB), 2009 WL 2923064 (D.N.J. Sep. 9, 2009) ........................32

*Diamond Alt. Energy, LLC v. EPA*,
  606 U.S. 100 (2025)...............................................................................................16

*Earle Refin., LLC v. New Vacuum Techs., LLC*,
  No. 22-4469 (RK) (DEA), 2024 WL 2749723 (D.N.J. May 29, 2024) .............21

*Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*,
  80 F.4th 223 (3d Cir. 2023) ............................................................................21, 22

*GEO Grp., Inc. v. Newsom*,
  50 F.4th 745 (9th Cir. 2022) .................................................................................26

*Gould Elecs. Inc. v. United States*,
  220 F.3d 169 (3d Cir. 2000) .................................................................................13

*Guthrie Clinic, Ltd. v. Travelers Indem. Co. of Ill.*,
  104 F. App'x 218 (3d Cir. 2004) ...........................................................................22

*Hines v. Davidowitz*,
  312 U.S. 52 (1941)..........................................................................................*passim*

*In re Samsung Data Sec. Breach Litig.*,
  761 F. Supp. 3d 781 (D.N.J. 2025).......................................................................20

*Landau v. Barouk*,
  No. 22-05259 (GC) (JBD), 2023 WL 8271805 (D.N.J. Nov. 30, 2023)......23, 24

*Laoye v. United States*,
  No. 14-5195 (GC) (DEA), 2023 WL 2263670 (D.N.J. Feb. 28, 2023),
  *reconsideration denied*, No. 14-5195 (GC) (DEA), 2023 WL 4621897 (D.N.J.
  July 19, 2023)...................................................................................................33, 34

iv

*Lopez v. Pec*,
No. 2:25-CV-13821-WJM-CF, 2025 WL 3771392
(D.N.J. Dec. 31, 2025)...................................................................................14

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992).....................................................................................15

*Lutter v. JNESO*,
86 F.4th 111 (3d Cir. 2023) .........................................................................16

*M&B IP Analysts, LLC v. Cortica-US, Inc.*,
No. 19-0429 (ES) (SCM), 2020 WL 3411027 (D.N.J. June 22, 2020)..............21

*Mathews v. Diaz*,
426 U.S. 67 (1976).......................................................................................28

*Minn. v. United States*,
305 U.S. 382 (1939).....................................................................................35

*New Jersey Civ. Just. Inst. v. Grewal*,
No. CV 19-17518, 2020 WL 4188129 (D.N.J. July 21, 2020) ..........................14

*Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc.*,
669 F. Supp. 2d 613, 618 (W.D. Pa. 2009) .......................................................21

*Polanco v. Omnicell, Inc.*,
988 F. Supp. 2d 451 (D.N.J. 2013)................................................................20

*Pub. Int. Rsch. Grp. of N.J., Inc. v. Powell Duffryn Terminals Inc.*,
913 F.2d 64 (3d Cir. 1990) ..........................................................................16

*Raines v. Byrd*,
521 U.S. 811 (1997).....................................................................................15

*Reeves v. Hemsley*,
2019 WL 2560133 (D.N.J. June 21, 2019)................................................33, 34

*Republic of Phil. v. Pimentel*,
553 U.S. 851 (2008).............................................................................35, 36, 38

*Rice v. Santa Fe Elevator Corp.*,
331 U.S. 218 (1947).....................................................................................28

v

*Rosenzweig v. Brunswick Corp.*,
  No. 08–807 (SDW), 2008 WL 3895485 (D.N.J. Aug. 20, 2008).................25, 26

*State of New Jersey v. The Geo Group, Inc.*,
  Case No. 2:25-cv-12007-JKS-LDW.....................................................................9

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)...........................................................................................16

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009)..........................................................................................15

*Tarek Holdings, LLC v. Shockley*,
  No. 21-20581(SDW)(AME), 2022 WL 13848153 (D.N.J. Oct. 24, 2022)........25

*Toll Bros. v. Twp. of Readington*,
  555 F.3d 131 (3d Cir. 2009) .............................................................................16

*Trump v. Hawaii*,
  585 U.S. 667 (2018)............................................................................................3

*United States v. California*,
  921 F.3d 865 (9th Cir. 2019) ............................................................................27

*United States v. Mitchell*,
  445 U.S. 535 (1980).........................................................................................33

*White v. Univ. of Cal.*,
  765 F.3d 1010 (9th Cir. 2014) ..........................................................................36

**Statutes**

6 U.S.C.
  § 112.............................................................................................26, 30, 34
  § 205........................................................................................................29
  § 251..........................................................................................................3
  § 252.......................................................................................................3, 4

8 U.S.C.
  § 1225.................................................................................................4, 26, 28
  § 1226..................................................................................................*passim*
  § 1231..................................................................................................*passim*

18 U.S.C.
§ 4013.................................................................................................................27

28 U.S.C. § 530C(a)(4) ..............................................................................26, 30, 34

FY2024 Appropriations Act, div. C, Title V, Pub. L. No. 118-47, 138 Stat. 460
   (Mar. 23, 2024) ...........................................................................................18, 29

Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25,
   2002) ...................................................................................................................3

## Rules

Fed. R. Civ. P.
   12(b)(1) ...................................................................................................*passim*
   12(b)(7) ...................................................................................................*passim*
   19.............................................................................................................*passim*

## Regulations

8 C.F.R. § 235.3 ...........................................................................................................4

48 C.F.R.
   § 15.204-2 .........................................................................................................7
   § 52.212-4 .........................................................................................................7

## Constitutional Provisions

U.S. Const. Art. I § 8 cl. 3-4 10-13............................................................................27

U.S. Const. Art. III § 2 ..............................................................................................15

## Other Authorities

Devon Williams and Miniya Malone, *Sherrill calls for the shutdown of the
   Delaney Hall immigrant detention center*, TRENTON JOURNAL (June 4, 2026),
   https://tinyurl.com/mrbkdp22 ........................................................................11

Eric Kiefer, *ICE Detention Center In NJ Is First To Open Under Trump's New
   Term*, PATCH.COM (Feb. 27, 2025, 12:30 PM, *updated* 10:20 PM),
   https://tinyurl.com/5h8bvz2k............................................................................8

The GEO Grp., Inc., *The GEO Group Awarded 15-Year Contract by U.S. Immigration and Customs Enforcement for Company-Owned, 1,000-Bed Delaney Hall Facility in New Jersey* (Feb. 27, 2025), https://tinyurl.com/2rkb5pdk ...............................................................................4

Jeff Goldman, *Gov. Sherrill finally gets her Delaney Hall tour - and leaves with even more questions*, NJ.COM (June 8, 2026),  https://tinyurl.com/4bmx66vb ...................................................................................................13, 25

Jelani Gibson, S.P. Sullivan & Brent Johnson, *A hunger strike, protests and a pepper-sprayed U.S. senator: Inside a violent holiday weekend at N.J.'s private ICE jail*, NJ.COM (updated June 1, 2026), https://tinyurl.com/4vfnabem ..................................................................................................................11

Katherine Donlevy, Geoff Earle & Gabrielle Fahmy, *Anti-ICE protesters pooling cash for riot gear, military-grade goggles to fuel Newark mayhem*, N.Y. POST (May 30, 2026), https://tinyurl.com/2ndk4rec....................................................10

Nicole Zanchelli, *Delaney Hall 'Has No Real Grounds to Be Open,' Newark Mayor Says, As New Jersey Sues Detention Center Operators for Access*, TAPINTO NEWARK (June 2, 2026), https://tinyurl.com/yfeaf5tb.................................10, 11

Press Release, N.J. Gov. Mikie Sherrill, Statement by Governor Sherrill on Delaney Hall (May 24, 2026), https://tinyurl.com/35vbhfwf.......................11, 12

Press Release, N.J. Gov. Mikie Sherrill, Statement by Governor Sherrill on Delaney Hall (May 25, 2026), https://tinyurl.com/35vbhfwf............................25

Richard Khavkine, *Feds plan to more than double immigrant detainees in Essex*, STAR LEDGER (June 10, 2011) .........................................................................8

Scott Fallon & Eduardo Cuevas, *New Jersey sues over controversial Delaney Hall ICE detention center*, USA TODAY (updated June 3, 2026), https://tinyurl.com/a3hdnt4d................................................................................10

Secretary Markwayne Mullin (@SecMullinDHS), X (June 8, 2026, at 10:11 PM), https://tinyurl.com/m3p2xm58 ..............................................................12, 13, 25

Sophie Nieto-Munoz, *Gov. Sherrill implements protest zones to 'cool things down' at Newark detention center*, N.J. MONITOR (May 29, 2026), https://tinyurl.com/5n98wsr3....................................................................10, 11

Steve Strunsky, *'We are all immigrants': Newark rallies against massive new ICE detention center*, NJ.COM (Mar. 11, 2025 7:45 PM, *updated* Mar. 13, 2025 7:57 AM), https://tinyurl.com/mr29pr94 ...................................................................................9

Tom Martello, *The left is fuming over Mikie Sherrill. Why it's already make or break for N.J.'s new gov.*, NJ.COM (updated June 3, 2026), https://tinyurl.com/5dyucn3d.......................................................................10, 11

U.S. Customs & Immigr. Enf't, *ICE expands detention capacity with Delaney Hall Facility in New Jersey* (Feb. 26, 2025), https://tinyurl.com/m5r5bf3t.................4

Defendant The GEO Group, Inc. ("GEO") respectfully submits this memorandum of law in support of its motion to dismiss this case pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because Plaintiff lacks Article III standing to pursue its claims. In the alternative, GEO respectfully requests an order joining U.S. Immigration and Customs Enforcement ("ICE") as a necessary party to this action pursuant to Rule 12(b)(7) and Rule 19 of the Federal Rules of Civil Procedure and thereafter dismissing the case with prejudice pursuant to Rule 19(b) of the Federal Rules of Civil Procedure after concluding that joinder of ICE is infeasible due to the doctrine of sovereign immunity.

## I.    INTRODUCTION

The Complaint must be dismissed for two independent reasons. First, and most fundamentally, the Court must dismiss pursuant to Rule 12(b)(1) because Plaintiff fails to establish either traceability or redressability, two essential elements of Article III standing. As a result, the Court lacks jurisdiction over this case and must dismiss without prejudice at the outset under Rule 12(b)(1). Article III of the U.S. Constitution requires a plaintiff to demonstrate (1) an injury that is (2) not only traceable to the challenged conduct of the defendant but also (3) likely to be redressed by a favorable judicial decision. Here, the alleged injury is the denial of access to Delaney Hall to conduct certain inspections. But because GEO did not deny access—ICE did—the injury is not traceable to any conduct by GEO. And for

1

essentially the same reason, any remedy that this Court would grant Plaintiff against GEO will not redress the alleged injury. This is a threshold, jurisdictional failure that, by itself, warrants immediate dismissal of this entire lawsuit.

Second, and only in the alternative, the Complaint should be dismissed with prejudice pursuant to Rule 12(b)(7) and Rule 19 of the Federal Rules of Civil Procedure. ICE is a required party to the current action under Rule 19(a) because: 1) the contract between ICE and GEO grants ICE exclusive use of the Delaney Hall Facility, and 2) ICE must approve all requests for access to all secure portions of the Delaney Hall Facility. As a result, complete relief is not possible without ICE being made a party to the suit since ICE is the only party that can grant Plaintiff the relief it seeks—i.e., entry to the Delaney Hall Facility.

Joining ICE does not end the analysis, however. It is black-letter law that sovereign immunity bars Plaintiff from pressing its claims against a federal agency like ICE. Accordingly, because ICE is a necessary party but joinder is infeasible, the case must be dismissed with prejudice pursuant to Rule 19(b). The United States Supreme Court has recognized that dismissal under Rule 19(b) will mean, in some instances, that plaintiffs will be left without a forum for definitive resolution of their claims. That result is contemplated under the doctrine of sovereign immunity, and that result is equitable and just in the present circumstances. Accordingly, dismissal

is proper because ICE is a necessary party to this dispute which is protected under a straightforward application of sovereign immunity.

Accordingly, GEO respectfully requests that the Court grant its motion to dismiss pursuant to Rule 12(b)(1), or, in the alternative, order that ICE is a necessary party to this action pursuant to Rule 12(b)(7) and Rule 19 and thereafter dismiss the case with prejudice pursuant to Rule 19(b) after concluding that joinder of ICE is infeasible due to the doctrine of sovereign immunity.

## II.    BACKGROUND

### A.    The Federal Government Controls Immigration Detention And Establishes National Uniform Standards

The courts have long considered the federal government's authority over immigration as a "fundamental sovereign attribute[.]" *Trump v. Hawaii*, 585 U.S. 667, 702 (2018).  This stems, at least in part, from the intertwined nature of immigration and foreign policy. *See Hines v. Davidowitz*, 312 U.S. 52, 64 (1941).

In exercising its authority over immigration, Congress created the Department of Homeland Security.  Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).  Congress tasked DHS with the detention and removal program for individuals unlawfully present in the United States.  6 U.S.C. § 251(1) & (2).  Congress created ICE as DHS's law enforcement body and directed the Assistant Secretary of ICE to "establish the policies for performing" the "functions" transferred to ICE and to "oversee the administration of such policies."  6 U.S.C.

§ 252(a)(3)(A) & (B).  ICE's Enforcement and Removal Operations (ERO) executes Congress's mandate that certain individuals be detained during removal proceedings or pending their removal.  *See, e.g.*, 8 U.S.C. §§ 1225(b)(1)(B)(ii), 1225(b)(2)(A), 1226(c)(1), 1231(a)(2).  Congress granted the Secretary of Homeland Security broad authority to identify "appropriate" facilities for detention, 8 U.S.C. § 1231(g)(1), and required DHS to favor using existing detention centers before initiating new construction, 8 U.S.C. § 1231(g)(2).

DHS promulgated regulations that identify criteria for public or private providers of detention services.  The primary requirement is that the provider "perform[] such service under contract in compliance with the Standard Statement of Work for Contract Detention Facilities."  8 C.F.R. § 235.3(e).

**B.    The ICE Contract Awarded For The Delaney Hall Facility**

In accordance with this requirement, on February 27, 2025, ICE awarded a 15-year, fixed-price contract to GEO for secure residential support services and the exclusive use of Delaney Hall for the establishment of a federal immigration processing center in Newark, New Jersey.  U.S. Customs & Immigr. Enf't, *ICE expands detention capacity with Delaney Hall Facility in New Jersey* (Feb. 26, 2025), https://tinyurl.com/m5r5bf3t; The GEO Grp., Inc., *The GEO Group Awarded 15-Year Contract by U.S. Immigration and Customs Enforcement for Company-*

4

*Owned, 1,000-Bed Delaney Hall Facility in New Jersey* (Feb. 27, 2025), https://tinyurl.com/2rkb5pdk.

The ICE Contract was most recently amended on June 10, 2026.  Ragsdale Decl. ¶ 5.  It contains unambiguous language that grants ICE exclusive use of the Delaney Hall Facility and provides that ICE exercise exclusive control over all access to secure portions of the facility.  *Id.* ¶ 4.  As a result, all requests for access to the secure portions of the Delaney Hall Facility must obtain pre-clearance approvals by ICE.  Grimes Decl. ¶ 6.

To start, Section 1.1 of the ICE Contract plainly states that "ICE is responsible for the detention, health, welfare, transportation, and deportation of aliens in removal proceedings, and those subject to a final order of removal from the U.S."  Ragsdale Decl. ¶ 5 (ICE Contract § 1.1).  The ICE Contract then unambiguously outlines the specific procedures for all requests for access to Delaney Hall:

> **Pre-clearance approval from ICE/ERO is required for any person or entity to have access to ICE field staff, facilities and information, including any proposed law enforcement officer visits**. All requests must be submitted in accordance with the requirements found at www.ice.gov/leadership/ocr. At facilities that house detainees for both ICE and the U.S. Marshals Service, inquiries regarding each agencies detainees will be directed to agency responsible for the detainee.
>
> All requests by NGOs and other stakeholders (which include, but are not limited to, intergovernmental entities, state and local governmental agencies, and members of academia, for tours or visits (including combined tour-and-visits events) must be submitted in writing to the local ICE/ERO Field Office. Tour requests should not be directed to the federal facility.

> Any such requests received by the federal facility shall be forwarded to the Field Office for review. When deciding whether to approve or deny the request, the Field Office Director, or his or her designee, will take into consideration safety and security, and the availability of personnel to staff the tour or visit. All tour or visit participants will be expected to submit personal information required by applicable ICE policies, so the Field Office can perform background checks as necessary.

Ragsdale Decl. ¶ 5 (ICE Contract § 1.16.16) (emphasis added).

Building on the above, multiple provisions of the ICE Contract repeatedly affirm that ICE—not GEO, and certainly not the State of New Jersey—controls access to Delaney Hall. The below chart summarizes these provisions:

| Contract Section | Quote | Citation |
|---|---|---|
| § 1.2: **Scope of Work** | "Detention standards shall be performed in accordance with the most current version of the ICE National Detention Standards (NDS) 2026."[1] | Ragsdale Decl. ¶ 5 (ICE Contract § 1.2) |
| § 1.15:8: **Visitation** | All visitations and tours to Delaney Hall "shall be conducted in accordance with the relevant provisions of NDS 2026 or as directed by ICE." | Ragsdale Decl. ¶ 5 (ICE Contract § 1.15:8) |
| § 1.16.1: **Security and Control (General)** | GEO "shall comply with ICE security plans." | Ragsdale Decl. ¶ 5 (ICE Contract § 1.16.1) |
| § 1.16.3: **Unauthorized Access** | GEO "shall detect and detain persons attempting to gain unauthorized access." | Ragsdale Decl. ¶ 5 (ICE Contract § 1.16.3) |

---

[1] The governing NDS 2026, which will be made publicly available shortly, confirms the principles expressed in the ICE Contract—namely, ICE (not GEO) controls access to facilities like Delaney Hall.

| § 1.21.1.2: **Preliminary Fitness Determination** | ICE "exercise[s] full control over granting, denying, withholding or terminating unescorted government facility . . . access for [GEO] applicants/employees." | Ragsdale Decl. ¶ 5 (ICE Contract § 1.21.1.2) |

As both Plaintiff in its motion papers, *see* ECF No. 1-1—and this Court in its text order, *see* ECF No. 3—have pointed out, the ICE Contract incorporates by reference the entirety of the language contained in FAR clause 52.212-4, which states that all contractors "shall comply with all applicable Federal, State and local laws, executive orders, rules and regulations applicable to its performance" under any commercial item contract. *See* 48 C.F.R. § 52.212-4(q) (2024). Significantly, however, FAR clause 52.212-4(s) proceeds to state that "[a]ny inconsistencies in this solicitation or contract shall be resolved by giving precedence" to "[t]he schedule of supplies/services" over "[o]ther [c]ompliances . . . of this clause." *Id*. at § 52.212-4(s). The language regarding ICE controlling access to Delaney Hall can be found in the Performance Work Statement ("PWS") part of the ICE Contract. Because the PWS falls within the definition of "schedule" under the express terms of this provision, the language in that agreement takes "precedence" over the "[o]ther [c]ompliances . . . of this clause," i.e., the quoted language in subclause (q) relied upon by Plaintiff. *See* 48 C.F.R. § 15.204-2(c) (2024) (denoting "schedule" to include "Description," "specifications, and a "statement of work").

The PWS also makes explicit that federal laws or rules govern to the extent there is any conflict with state or local laws or rules:

> **If any conflicts between federal, state, or local laws or rules arise, the federal rules shall be followed**. Nothing in this performance work statement is intended to, or shall be construed to be, a waiver of federal supremacy or the immunity of the Government or its support-service provider, the contractor. **Otherwise, applicable or more stringent state or local laws or regulations shall not apply to the performance under this contract when they would directly or indirectly regulate, dictate, or control the support-service provider's performance under these standards**.

Ragsdale Decl. ¶ 5 (ICE Contract § 1.2) (emphasis added).

## C.    The 2025 Politicization Of Delaney Hall

GEO previously operated Delaney Hall as an immigration detention center for many years without incident.  Starting in 2011, GEO operated Delaney Hall under the supervision of President Obama's Department of Homeland Security.  Grimes Decl. ¶ 3; *see* Richard Khavkine, *Feds plan to more than double immigrant detainees in Essex*, STAR LEDGER (June 10, 2011).  During this time, neither the State of New Jersey nor any New Jersey governmental entity in New Jersey sued GEO in connection with inspections or any other issues at Delaney Hall.  Grimes Decl. ¶ 8.

That changed when President Trump was reelected to a second term on November 5, 2024.  New Jersey elected officials suddenly vowed to "fight like hell" and "fight to the death" against Delaney Hall—despite raising no such alarms about the operation of this center during the Obama administration.  Grimes Decl. ¶ 8; *see, e.g.*, Eric Kiefer, *ICE Detention Center In NJ Is First To Open Under Trump's New Term*, PATCH.COM (Feb. 27, 2025, 12:30 PM, *updated* 10:20 PM), https://tinyurl.com/5h8bvz2k.  Newark Mayor Ras Baraka, during his unsuccessful

campaign for New Jersey governor, vowed to block federal immigration detention at the Delaney Hall Facility and padlock the building if necessary. *See* Steve Strunsky, *'We are all immigrants': Newark rallies against massive new ICE detention center*, NJ.COM (Mar. 11, 2025 7:45 PM, *updated* Mar. 13, 2025 7:57 AM), https://tinyurl.com/mr29pr94.

The 2025 politicization of Delaney Hall resulted in multiple lawsuits, including two pending before this Court: *City of Newark v. GEO Re-Entry Group, LLC et al.*, Case No. 2:25-cv-02225-JKS-LDW and *State of New Jersey v. The Geo Group, Inc.*, Case No. 2:25-cv-12007-JKS-LDW. The Court is well aware of the procedural history of these cases. But there are two indisputable conclusions from these lawsuits relevant to this case. First, Newark repeatedly obtained access to Delaney Hall to conduct inspections by requesting permission through ICE—not GEO. *See City of Newark* (ECF No. 2 ¶¶ 4–10; ECF No. 9-1 at 3; ECF No. 35 at 2). Second, and notwithstanding all of the political noise to the contrary, the inspections resulted in no significant outstanding concerns—Newark has admitted *on the record* that it conducted all of its requested inspections and thereafter voluntarily withdrew its motion for emergency relief. *See id.* ECF No. 57.

## D.    The 2026 Politicization Of Delaney Hall

In fact, from June 2025 to May 2026, there were no complaints about any New Jersey state or local agency failing to obtain access to Delaney Hall to conduct

9

inspections. That—again—changed in late May 2026, when political protests erupted outside of Delaney Hall. Scott Fallon & Eduardo Cuevas, *New Jersey sues over controversial Delaney Hall ICE detention center*, USA TODAY (updated June 3, 2026), https://tinyurl.com/a3hdnt4d. Although Governor Mikie Sherrill initially joined the protestors over the Memorial Day weekend, by Friday, May 29, 2026, she ordered New Jersey State Police to create peaceful assembly zones outside Delaney Hall in an attempt to keep the peace. Sophie Nieto-Munoz, *Gov. Sherrill implements protest zones to 'cool things down' at Newark detention center*, N.J. MONITOR (May 29, 2026), https://tinyurl.com/5n98wsr3. As Governor Sherril explained, "national extremist groups have become involved in the protest" and multiple people from outside the State of New Jersey were arrested. Katherine Donlevy, Geoff Earle & Gabrielle Fahmy, *Anti-ICE protesters pooling cash for riot gear, military-grade goggles to fuel Newark mayhem*, N.Y. POST (May 30, 2026), https://tinyurl.com/2ndk4rec. Governor Sherrill has since faced criticism for this decision "from advocacy groups and progressive organizations." Nicole Zanchelli, *Delaney Hall 'Has No Real Grounds to Be Open,' Newark Mayor Says, As New Jersey Sues Detention Center Operators for Access*, TAPINTO NEWARK (June 2, 2026), https://tinyurl.com/yfeaf5tb; *see also, e.g.*, Tom Martello, *The left is fuming over Mikie Sherrill. Why it's already make or break for N.J.'s new gov.*, NJ.COM (updated June 3, 2026), https://tinyurl.com/5dyucn3d.

As with the 2025 politicization of Delaney Hall, multiple New Jersey governmental officials have unambiguously announced their goals to the press: they want to shut down Delaney Hall, one way or another, regardless of the facts or process. For example, Governor Sherrill spoke to the press on May 29, 2026, stating she would "keep pushing to see Delaney Hall close." Nieto-Munoz, *Gov. Sherrill implements protest zones*, *supra*; *see also* Jelani Gibson, S.P. Sullivan & Brent Johnson, *A hunger strike, protests and a pepper-sprayed U.S. senator: Inside a violent holiday weekend at N.J.'s private ICE jail*, NJ.COM (updated June 1, 2026), https://tinyurl.com/4vfnabem (reporting that Gov. Sherrill, U.S. Sen. Andy Kim, and other Democratic members of New Jersey's congressional delegation "want the detention center shut down"). Governor Mikie Sherrill recently put it as bluntly as possible: "I don't think private detention centers should be operating in New Jersey" and that "I'd like to see it shut down." Devon Williams and Miniya Malone, *Sherrill calls for the shutdown of the Delaney Hall immigrant detention center*, TRENTON JOURNAL (June 4, 2026), https://tinyurl.com/mrbkdp22.

E.    **ICE—Not GEO—Controls Access To Delaney Hall**

Requests for access to secure portions of Denaley Hall have always been subject to ICE approval. Grimes Decl. ¶ 12. For example, between January 1, 2026 and June 2, 2026, there were seventeen separate visits to Delaney Hall by various

11

politicians.  *Id.*  Each visit was approved by ICE.  Accordingly, as a matter of fact, ICE controls access to Delaney Hall.  *Id.*

Consistent with this authority, ICE—not GEO—has also been responsible for granting and denying Plaintiff's access to Delaney Hall relevant to this lawsuit. Specifically, on May 28, 2026, ICE granted Plaintiff permission to conduct an inspection of the kitchen at Delaney Hall.  *See* Grimes Decl. ¶ 10 Ex. B.  The New Jersey Department of Health issued a Retail Food Inspection Report based on this inspection, which states that "[o]verall sanitation and physical condition of the production kitchen and warehousing areas were observed to be satisfactory and free from signs of rodent or vermin activity[.]"  Grimes Decl. ¶ 9 Ex. A.  The report also notes that the [l]ast local health department inspection was conducted on 4/25/25 which was rated satisfactory."  *Id*.  Later, on May 29, 2026, ICE—not GEO—denied access to several officials from New Jersey Department of Health, including the inspector who visited on May 28, 2026.  Grimes Decl. ¶ 11 Ex. C.

Indeed, as Governor Mikie Sherrill herself explained in a press release pre-dating this lawsuit:  "I have contacted ICE to gain access to the facility."  Press Release, N.J. Gov. Mikie Sherrill, Statement by Governor Sherrill on Delaney Hall (May 24, 2026), https://tinyurl.com/35vbhfwf.  And on June 8, 2026, ICE (not GEO) granted Governor Sherrill access to tour Delaney Hall.  *See* Secretary Markwayne Mullin    (@SecMullinDHS),    X    (June    8,    2026,    at    10:11    PM),

12

https://tinyurl.com/m3p2xm58; Jeff Goldman, *Gov. Sherrill finally gets her Delaney Hall tour — and leaves with even more questions*, NJ.COM (June 8, 2026), https://tinyurl.com/4bmx66vb.

## III.    ARGUMENT

### A.    The Court Should Dismiss This Action Pursuant To Rule 12(b)(1)

Challenges to subject matter jurisdiction under Rule 12(b)(1) come in two forms: facial and factual. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint[.]" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (citation omitted). In contrast, a factual attack "concerns the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (*quoting U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007)). A party challenges the factual basis of jurisdiction "either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Davis*, 824 F.3d at 346 (*quoting Const. Party of Penn. v. Aichele*, 757 F.3d 347, 358 (3d. Cir. 2014)). A plaintiff defending a factual challenge bears "the burden of proof that jurisdiction does in fact exist," but the plaintiff's allegations hold "no presumptive truthfulness" and a court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case[.]" *Davis*, 824 F.3d at 346 (*quoting Mortenson v. First Fed. Sav. & Loan Ass'n*,

13

549 F.2d 884, 891 (3d Cir. 1977)); *see also, e.g., Bagal v. Rutgers*, No. CV 24-11440 (ZNQ) (JBD), 2025 WL 2910186, at *3 (D.N.J. Oct. 14, 2025) (dismissing claims under Article III's standing requirements and Rule 12(b)(1) after evaluating claims under facial challenge during pleading stage); *New Jersey Civ. Just. Inst. v. Grewal*, No. CV 19-17518, 2020 WL 4188129, at *3 n.2 (D.N.J. July 21, 2020) (considering facts outside the pleadings as part of factual challenge to jurisdiction under Article III's standing requirements and Rule 12(b)(1)).

Here, GEO's challenge is two-fold. First, the challenge is facial because the ICE Contract has been incorporated by reference into the Complaint—indeed, it appears to be the foundation of Plaintiff's case, *see* ECF No. 1-1 ("Compl.") at 5— so it may be considered by the Court in a facial challenge under the incorporation by reference doctrine. *See, e.g.*, *Lopez v. Pec*, No. CV 23-23012 (ES) (CF), 2025 WL 3771392, at *5 (D.N.J. Dec. 31, 2025) (considering exhibits incorporated by reference into the complaint as part of facial challenge); *Cornerstone Bldg. Brands, Inc. v. Teamsters Loc. 97 of New Jersey*, No. 2:25-CV-13821-WJM-CF, 2025 WL 3687894, at *2 (D.N.J. Dec. 19, 2025) (same). Second, in the event the Court construes the introduction of the ICE Contract as presenting competing facts, and/or finds it necessary to consider other facts presented by the declarations and exhibits attached thereto submitted in support of this motion, GEO also brings a factual challenge to prove that it is ICE, not GEO, that controls access to Delaney Hall.

Article III of the United States Constitution limits the jurisdiction of federal courts to the resolution of "[c]ases" and "[c]ontroversies." U.S. Const. art. III, § 2; *see City of L.A. v. Lyons*, 461 U.S. 95, 101 (1983). One aspect of this case-or-controversy requirement is that the party invoking the jurisdiction of the federal judiciary establish "standing" to sue. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Standing consists of three "irreducible" constitutional elements: (1) an "injury in fact"; (2) "a causal connection between the injury and the conduct complained of— the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) a showing that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation modified). Plaintiff "bears the burden of showing that [it] has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

In this case, Plaintiff is unable to meet its burden in establishing both the second and third elements: traceability and redressability. Traceability mandates that the alleged injury cannot result from "independent action of some third party not before the court." *Lutter v. JNESO*, 86 F.4th 111, 127 (3d Cir. 2023) (citations omitted); *see also, e.g.*, *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 142 (3d Cir. 2009) ("The plaintiff must establish that the defendant's challenged actions, and not

15

the actions of some third party, caused the plaintiff's injury."). The redressability requirement is "closely related" to the traceability element. *Pub. Int. Rsch. Grp. of N.J., Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 73 (3d Cir. 1990). "While the fairly traceable element focuses on the connection between the defendant's conduct and the plaintiff's injury, the redressability factor focuses on the connection between the plaintiff's injury and the judicial relief sought." *Id.* As such, redressability requires the Plaintiff to "'show a predictable chain of events' that would likely result from judicial relief and redress [its] injury." *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 121 (2025) (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 385 (2024)). "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). It is not enough that Plaintiff dislikes GEO or is frustrated by ICE's approval process. *See id.* ("[P]sychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury[.]").

Here, Plaintiff requests an order enjoining GEO from "[b]arring Plaintiff and the New Jersey Department of Health from full access to the immigration detention center known as Delaney Hall . . . to conduct an inspection." Compl. at 20. This injury is neither traceable to GEO's conduct nor redressable by any order issued against GEO because ICE—a party not before this Court—controls access to

16

Delaney Hall.  ICE not only has exclusive use of the Delaney Hall Facility but also exercises exclusive control over all access to secure portions of the facility.  Grimes Decl. ¶ 5.  As a result, all requests for access to the secure portions of the Delaney Hall Facility must obtain pre-clearance approvals by ICE.  *Id.* ¶ 6.

Indeed, while Plaintiff's own pleading attempts to dance around this fact, the Complaint essentially concedes that GEO merely collected the Department of Health's request to inspect additional, secure areas of Delaney Hall, provided the form to ICE, and deferred to ICE's decision to both grant and deny access.  *See* Compl. at 2–19 ¶¶ 54–58.  The Department of Health later reached out to ICE, and spoke to a "federal official" on June 1, 2026, who advised "that [the Department of Health] would not be able to inspect any areas of the facility other than the food service areas it had already visited."  *Id.* ¶ 64.  These allegations are entirely consistent with GEO's own evidence, which confirms that on May 28, 2026, ICE granted Plaintiff permission to conduct an inspection of the kitchen at Delaney Hall. *See* Grimes Decl. ¶ 10 Ex. B.  It was likewise ICE—and not GEO—that denied Plaintiff's access on May 29, 2026 to inspect several other areas of Delaney Hall. *See id.* ¶ 11 Ex. C.

ICE's control over access to Delaney Hall is entirely consistent with the legal framework governing immigration detention in this country and the terms of the ICE Contract.  Congress has expressly approved ICE's security protocol limiting visits

17

to secure immigration detention facilities.  In fact, Congress imposed only a small carve-out for its own members and staff but did not otherwise alter ICE's security mandate.  *See* FY2024 Appropriations Act, div. C, title V, Pub. L. No. 118-47, 138 Stat. 460, 619 (Mar. 23, 2024).

Moreover, the ICE Contract confirms that "ICE is responsible for the detention, health, welfare, transportation, and deportation of aliens in removal proceedings[.]" Ragsdale Decl. ¶ 5 (ICE Contract § 1.1).  It also outlines the specific procedures for all requests for access to Delaney Hall, unambiguously requiring ICE provide pre-clearance approval for all visitors:

> **Pre-clearance approval from ICE/ERO is required for any person or entity to have access to ICE field staff, facilities and information, including any proposed law enforcement officer visits**. All requests must be submitted in accordance with the requirements found at www.ice.gov/leadership/ocr. At facilities that house detainees for both ICE and the U.S. Marshals Service, inquiries regarding each agencies detainees will be directed to agency responsible for the detainee.

> All requests by NGOs and other stakeholders (which include, but are not limited to, intergovernmental entities, state and local governmental agencies, and members of academia, for tours or visits (including combined tour-and-visits events) must be submitted in writing to the local ICE/ERO Field Office. Tour requests should not be directed to the federal facility.

> Any such requests received by the federal facility shall be forwarded to the Field Office for review. When deciding whether to approve or deny the request, the Field Office Director, or his or her designee, will take into consideration safety and security, and the availability of personnel to staff the tour or visit. All tour or visit participants will be expected to submit personal information required by applicable ICE policies, so the Field Office can perform background checks as necessary.

18

Ragsdale Decl. ¶ 5 (ICE Contract § 1.16.16) (emphasis added).

Multiple provisions of the ICE Contract reiterate the need for pre-clearance approval from ICE—not GEO. *See, e.g.*, Ragsdale Decl. ¶ 5 (ICE Contract § 1.15:8) (stating that all visitations and tours to Delaney Hall "shall be conducted in accordance with the relevant provisions of NDS 2026 or as directed by ICE."); *id*. (ICE Contract § 1.16.1) (stating that "GEO "shall comply with ICE security plans"); *id*. (requiring GEO to "detect and detain persons attempting to gain unauthorized access"); *id*. (noting that ICE "exercise[s] full control over granting, denying, withholding or terminating unescorted government facility . . . access for [GEO] applicants/employees," subject to ICE's screening procedures); *see also, e.g.*, *id*. (ICE Contract § 1.2) ("Detention standards shall be performed in accordance with the most current version of the ICE National Detention Standards (NDS) 2026.").[2]

Critically, and consistent with this legal framework, requests to access Delaney Hall must be approved from ICE—and always have been.  Grimes Decl. ¶ 12.  As recently as June 8, 2026, Governor Sherrill was granted access to Delaney Hall through ICE—*not* GEO.

---

[2] The governing NDS 2026, which will be made publicly available shortly, confirms the principles expressed in the ICE Contract—namely, ICE controls access to facilities like Delaney Hall.

Put simply: ICE controls access to Delaney Hall as a matter of law, as a matter of contract, and a matter of undisputed fact.  As a result, Plaintiff lacks Article III standing to sue because its purported injury is neither traceable to GEO nor is it redressable by any injunction against GEO.  The Court must therefore grant GEO's motion to dismiss pursuant to Rule 12(b)(1) because lacks subject matter jurisdiction over this dispute.  *See, e.g.*, *Bhatt v. Comm'r of NJDOL*, No. 3:16-CV-5654-BRM-DEA, 2018 WL 623667, at *7 (D.N.J. Jan. 30, 2018) (dismissing claims under 12(b)(1) under traceability prong); s*ee also, e.g., In re Samsung Data Sec. Breach Litig.*, 761 F. Supp. 3d 781, 801 (D.N.J. 2025) (dismissing claims under 12(b)(1) under injury-in-fact and traceability prongs); *Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451, 464 (D.N.J. 2013) (dismissing claims under 12(b)(1) under traceability prong).

**B.    In the Alternative, The Court Should Find ICE Is A Necessary Party To This Action And Dismiss Pursuant to Rules 12(b)(7) And Rule 19**

Under Rule 12(b)(7), a party may move to dismiss a case for failure to join a necessary and indispensable party, as defined by Rule 19.  In considering a Rule 12(b)(7) motion, the Court must accept allegations in the complaint as true and view them in the light most favorable to the plaintiff, but it also "may consider evidence outside of the pleadings." *Earle Refin., LLC v. New Vacuum Techs., LLC*, No. 22-4469 (RK) (DEA), 2024 WL 2749723, at *3 (D.N.J. May 29, 2024) (internal quotation marks & citations omitted); *see also M&B IP Analysts, LLC v. Cortica-*

20

*US, Inc.*, No. 19-0429 (ES) (SCM), 2020 WL 3411027, at *2 (D.N.J. June 22, 2020);

*Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc.*, 669 F. Supp. 2d 613, 618 (W.D.

Pa. 2009) (citation omitted).  In this case, as with the argument for dismissal under

Rule 12(b)(1), GEO is relying not only on the ICE Contract incorporated by

reference into the Complaint, but also the supporting declarations and exhibits

attached thereto.

The Third Circuit has set forth a three-step inquiry to determine whether a

case should be dismissed under Rule 12(b)(7).  *Epsilon Energy USA, Inc. v.*

*Chesapeake Appalachia, LLC*, 80 F.4th 223, 232 (3d Cir. 2023).  These steps

include:

1) Considering the qualifications under Rule 19(a)(1)(A) and (a)(1)(B), should the absent party be joined?;

2) If so, is joinder feasible—that is, can the party be joined without depriving the court of the ability to hear the case?;

3) If joining the party is not feasible, should the action continue in the party's absence or be dismissed?

*Id.*

When considering a motion to dismiss for failure to join a necessary and

indispensable party, courts first determine whether an absent "party is necessary to

an action" under Rule 19(a). *Guthrie Clinic, Ltd. v. Travelers Indem. Co. of Ill.*, 104

F. App'x 218, 221 (3d Cir. 2004).  Under Rule 19(a)(1), a party is necessary or

"required" if, among other reasons,

21

(A)   in that person's absence, the court cannot accord complete relief among existing parties; or

(B)   that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). The Third Circuit has confirmed that courts should make decisions under Rule 19 based on "factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests." *Epsilon Energy USA, Inc.*, 80 F.4th at 232 (quoting *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 119 (1968)).

In this case, the Court should find that ICE is a necessary party under Rule 19. Under Rule 19(a)(1)(A), complete relief is not possible because only ICE can grant the requested relief, i.e., access to the Delaney Hall Facility. Under Rule 19(a)(1)(B), ICE—the absent party—claims an interest in the operations of the Delaney Hall Facility as it is, by Congressional statute, the entity with the authority to detain noncitizens while removal proceedings are in progress. Furthermore, under Rule 19(a)(1)(B)(i), proceeding without ICE would impair ICE's interest in managing the conditions of immigration detention, which is a responsibility assigned

22

to it by Congress through statute.  And even if ICE did not have interest in managing its facilities—which it obviously does—under Rule 19(a)(1)(B)(ii), ICE's absence in this suit would subject GEO to substantial risk of inconsistent obligation because it does not have the power to grant the access Plaintiff is seeking by this action.

After concluding ICE is a necessary party under Rule 19(a), the Court should dismiss the Complaint with prejudice because joinder is not feasible under Rule 19(b) since ICE is protected by sovereign immunity.  Accordingly, under the factors articulated under Rule 19(b), the Court should find dismissal is required because ICE, as a required entity, is not amenable to suit.

### 1.    ICE Is a Necessary Party Under Rule 19(a)(1)(A) & (B)

#### a.    Rule 19(a)(1)(A): Complete Relief Is Not Possible

A court is able to afford "complete relief" for purposes of Rule 19 when a party's absence does not prevent the plaintiffs from receiving their requested relief. Fed. R. Civ. P. 19(a)(1)(A); *see, e.g.*, *Landau v. Barouk*, No. 22-05259 (GC) (JBD), 2023 WL 8271805, at *6 (D.N.J. Nov. 30, 2023) (denying request for joinder because movant had not proven absent party needed to be joined to "accord complete relief").  Rule 19 "stresses the desirability of joining those persons in whose absence the court would be obliged to grant partial or 'hollow' rather than complete relief to the parties before the court.  The interests that are being furthered here are not only those of the parties, but also that of the public in avoiding repeated lawsuits on the

same essential subject matter." *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 844 F.2d 1050, 1054 n.5 (3d Cir. 1988) (quoting Fed. R. Civ. P. 19 Advisory Comm. Notes).

This Court here cannot grant "complete relief" among the existing parties in ICE's absence. Plaintiff seeks an order compelling GEO to allow the New Jersey Department of Health access to the Delaney Hall Facility to conduct inspections. It is undisputed that only ICE can grant this relief, however. As stated before, all requests for access to the secure portions of the Delaney Hall Facility must obtain pre-clearance approvals from ICE, including all requests for access by federal and state employees. Grimes Decl. ¶¶ 4-7. Put plainly, and as set forth above, GEO is without independent authority to provide the requested access to the secure portions of the Delaney Hall Facility absent ICE clearance and approval. *See id.* ICE—not GEO—has been responsible for granting and denying Plaintiff's access to Delaney Hall. Specifically, on May 28, 2026, ICE granted Plaintiff permission to conduct an inspection of the kitchen at Delaney Hall. *See id.* ¶ 10 Ex. B. Later, on May 29, 2026, ICE—again, not GEO—denied access to several officials from New Jersey Department of Health, including the inspector who visited on May 28, 2026. *See id.* ¶ 11 Ex. C. Indeed, as Governor Mikie Sherrill herself explained in a press release pre-dating this lawsuit: "I have contacted ICE to gain access to the facility." Press Release, N.J. Gov. Mikie Sherrill, Statement by Governor Sherrill on Delaney Hall

24

(May 25, 2026), https://tinyurl.com/35vbhfwf.  And on June 8, 2026, ICE (not GEO) granted Governor Sherrill access to tour Delaney Hall.  *See* Secretary Markwayne Mullin (@SecMullinDHS), X (June 8, 2026, at 10:11 PM),; Jeff Goldman, *Gov. Sherrill finally gets her Delaney Hall tour — and leaves with even more questions*, NJ.COM (June 8, 2026).  Simply stated, GEO is without the authority—whether ordered by this Court or not—to grant the Department of Health the access to the Delaney Hall Facility that Plaintiff seeks.  Only ICE can grant that access.

Under these circumstances, an order compelling GEO—but not ICE—to grant the Department of Health the requested access would serve absolutely no purpose. As a result, this Court is unable to grant "complete relief" among the existing parties absent the inclusion of ICE as a party.  *See, e.g.*, *Tarek Holdings, LLC v. Shockley*, No. 21-20581(SDW)(AME), 2022 WL 13848153, at *4-5 (D.N.J. Oct. 24, 2022) (granting motion to dismiss because complete relief was not possible without absent party and their joinder would have destroyed diversity jurisdiction); *Rosenzweig v. Brunswick Corp.*, No. 08–807 (SDW), 2008 WL 3895485, at *10 (D.N.J. Aug. 20, 2008) (granting motion to dismiss because complete relief was not possible without absent party and contract required adjudication of claims in Connecticut).

### b. Rule 19(a)(1)(B): ICE Claims an Interest in Delaney Hall Operations and Access

As part of its operations administering the immigration system, the Department of Homeland Security ("DHS") detains certain noncitizens pending the

completion of removal proceedings or while awaiting removal.  *See* 8 U.S.C. §§ 1225(b), 1226, 1231(a).  Congress authorized DHS to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal," *id*. § 1231(g)(1), and has directed that DHS "should favor the use of existing facilities for immigration detention, whether through purchase or lease." *GEO Grp., Inc. v. Newsom*, 50 F.4th 745, 751 (9th Cir. 2022) (en banc); *CoreCivic, Inc. v. Governor of N.J.*, 145 F.4th 315, 320 (3d Cir. 2025) (citing 8 U.S.C. § 1231(g)).

Congress also specifically granted the Secretary of Homeland Security broad authority "to make contracts . . . as may be necessary and proper to carry out the Secretary's responsibilities."  6 U.S.C. § 112(b)(2).  Similarly, Congress granted authority to "carr[y] out," "in the reasonable discretion of the Attorney General," the activities of ICE "through any means, including . . . through contracts, grants, or cooperative agreements with non-Federal parties[,]" except to the extent that such agreements are otherwise precluded by federal law.  28 U.S.C. § 530C(a)(4).  In 2000, Congress enacted a statute stating:  "[n]otwithstanding any other provision of law, . . . the Attorney General hereafter may enter into contracts and other agreements, of any reasonable duration, for detention or incarceration space or facilities, including related services, on any reasonable basis."  18 U.S.C. § 4013, note.  Through these statutes, Congress has authorized ICE to use private contracted detention facilities and services contractors. *See CoreCivic, Inc. v. Murphy*, 690 F.

Supp. 3d 467, 472 (D.N.J. 2023); *United States v. California*, 921 F.3d 865, 882 n.7

(9th Cir. 2019) (18 U.S.C. § 1231(g)(1) "contemplates use of both federal facilities

and nonfederal facilities with which the federal government contracts").   The

Delaney Hall Facility is one such contracted facility where DHS, through ICE,

detains aliens pending removal or a decision on removal.

As explained in *Hines*, 312 U.S. at 64-66, the detention of aliens implicates

both the federal government's interest in a "uniform" immigration system and in the

conduct of foreign relations.  *Id.*; *see also, e.g.*, *Arizona v. United States*, 567 U.S.

387, 394-95 (2012) (noting that "foreign countries concerned about the status, safety,

and security of their nationals in the United States must be able to confer and

communicate on this subject with one national sovereign, not the 50 separate

States"); *see generally* U.S. Const. art. I, § 8, cl. 3-4, 10-13.   Concern for orderly

immigration and for the reciprocal treatment of United States citizens detained

abroad "make the treatment of aliens, in whatever state they may be located, a *matter*

*of national moment*."  *Hines*, 312 U.S. at 73 (emphasis added).  Thus, "[a]ny policy

toward aliens is vitally and intricately interwoven with contemporaneous policies in

regard to the conduct of foreign relations[.]"  *Mathews v. Diaz*, 426 U.S. 67, 81 n.17

(1976).   The circumstances and conditions of confinement are therefore the

quintessential "field in which the federal interest is so dominant that the federal

system will be assumed to preclude enforcement of state laws on the same subject."

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947) (citation omitted). "*No state* can add to or take from the force and effect" of federal law governing the detention of aliens. *Hines*, 312 U.S. at 63 (emphasis added). Plaintiff's effort to stifle federal immigration detention through misguided and discriminatory application of state health codes runs directly into a field of dominant federal interests.

More specifically, ICE holds material and dominant interests in the Department of Health's attempts to gain access to the Delaney Hall Facility. ICE is responsible for the custody and well-being of immigration detainees at the Delaney Hall Facility. *See* 8 U.S.C. §§ 1225(b), 1226, 1231. ICE exercises control over all access to secure portions of the Delaney Hall Facility. Grimes Decl. ¶ 5. Unsurprisingly, ICE—not GEO—has also been responsible for granting and denying Plaintiff's access to Delaney Hall. For example, on May 28, 2026, ICE—not GEO—granted Plaintiff permission to conduct an inspection of the kitchen at Delaney Hall. *See* Grimes Decl. ¶ 10 Ex. B.

ICE's control over access to and inspections concerning its federal immigration detention facilities is a product of Congressional authorization. Congress specifically approved ICE's security protocol which imposes limits on visits to secure facilities. In fact, Congress imposed only a small carve out for its own members and staff but did not otherwise alter ICE's mandate. *See* FY2024

28

Appropriations Act, div. C, title V, Pub. L. No. 118-47, 138 Stat. 460, 619 (Mar. 23, 2024). Congress similarly granted the DHS Office of the Immigration Detention Ombudsman ("OIDO") sole authority to conduct inspections and investigations of complaints regarding conditions at federal immigration detention. *See* 6 U.S.C. § 205(b)(1) (assigning the OIDO with responsibility to create a "process to receive, investigate, resolve, and provide redress" for complaints concerning the "rights of individuals in immigration detention"); *see also id.* § 205(b)(3) (granting OIDO authority to "[c]onduct unannounced inspections of detention facilities").

Accordingly, it is beyond question that ICE has an interest in the Department of Health's attempts to obtain access to the Delaney Hall Facility to conduct inspections pursuant to state laws. The conditions of federal detention at the Delaney Hall Facility implicate both the federal government's interest in a "uniform" immigration system and in the conduct of foreign relations. *Hines*, 312 U.S. at 64-66; *see Arizona*, 567 U.S. at 394-95. The conditions surrounding detention at the Delaney Hall Facility is "a matter of national moment[,]" *Hines*, 312 U.S. at 73, that Congress assigned to the discretion of DHS. 6 U.S.C. § 112(b)(2); 28 U.S.C. § 530C(a)(4); 8 U.S.C. §§ 1226(e), 1231(g). There can be no question that ICE has an interest in Plaintiff's attempts to force entry into a federal immigration detention facility so that Department of Health can ostensibly conduct inspections of a federal facility under state codes.

29

### (1)    Proceeding Without ICE Will Impair and Impede ICE's Interests

As detailed in Section III.B.1.b *supra*, the U.S. Supreme Court has noted that the detention of aliens and the conditions of immigration detention are of momentous federal interest. Congress specifically assigned responsibility to address these interests to the discretion of DHS and ICE. *See* 6 U.S.C. § 112(b)(2); 28 U.S.C. § 530C(a)(4); 8 U.S.C. §§ 1226(e), 1231(g). Proceeding in this case without ICE to represent and address these dominant federal interests with foreign policy implications would undoubtably impair and impede those interests. *See Arizona*, 567 U.S. at 394-95. The Department of Health's attempts to usurp the authority granted by Congress to ICE and to investigate ICE's performance of responsibilities assigned by Congress to ICE's discretion seek to sidestep principles of sovereign immunity and directly impair and impede ICE's interests and those of the United States.

ICE has previously detailed the serious and manifold federal interests in specifically maintaining necessary federal immigration detention facilities in the New Jersey Court. *See* Statement of Interest by United States of America, *CoreCivic, Inc. v. Murphy*, Case No. 3:23-cv-00967-RK-TJB (D.N.J. 2023), ECF No. 37 at 19-24. ICE has specifically explained that limiting necessary federal immigration detention would have the following consequences: (1) severe disruption of law-enforcement operations in the area; (2) hinderance of counterterrorism and

other law enforcement operations being conducted by the Joint Terrorism Task Force operating out of the FBI's New York and Newark offices; (3) prevention of ICE from detaining noncitizens with violent criminal histories that are released from state and local facilities; (4) relocation of immigration detainees at great cost to the federal government, and; (5) delay and impairment of federal proceedings caused by out-of-state detention—and detainees' concomitant lack of access to their families— that may slow immigration proceedings. *Id.* The Third Circuit's parting observation in *CoreCivic, Inc.* is equally apt to Plaintiff's actions in the present case: "[New Jersey] asks us not to notice the federal elephant in the room. Yet we can see the law for what it really is, 'claiming the authority to dictate the manner in which the federal [immigration] function is carried out.'" *CoreCivic, Inc.*, 145 F.4th at 329 (quoting *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174,181 n.3 (1988)) (second alteration in original).

### (2)    Proceeding Without ICE Would Subject GEO to Substantial Risk of Inconsistent Obligations

It is manifest that proceedings in the current action conducted without ICE as a party would subject GEO to a substantial risk of inconsistent obligations. An injunction requiring GEO to allow the Department of Health access to secure portions of the Delaney Hall Facility beyond the areas ICE has authorized would directly conflict with ICE's control over access to the Delaney Hall Facility and the unambiguous language in the ICE Contract. Indeed, ICE has already once denied

31

access to the Department of Health.  Compl. ¶ 64.  Therefore, it requires little speculation to conclude that proceeding without ICE would subject GEO to a "substantial risk of imposing inconsistent obligations."  *Develcom Funding, LLC v. Am. Atl. Co.*, No. 09–1839(RMB), 2009 WL 2923064, at *3 (D.N.J. Sep. 9, 2009) (finding substantial risk of inconsistent obligations where defendant would potentially face injunction mandating the immediate cessation of the deposit of dredge spoil while state court could allow that same deposit to continue); *see Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1156 (9th Cir. 2002) (finding substantial risk of inconsistent obligations where defendant would potentially face injunction mandating actions that would conflict with its contractual obligations to a non-party sovereign).

Proceeding without ICE may force GEO into an untenable position of having to mediate directly conflicting orders from ICE and this Court.  And certainly, Plaintiff will undertake enforcement actions against GEO.  The circumstances of the present case satisfy the requirements of Rule 19(a)(1)(B)(ii).

**2.    After Concluding That ICE Is a Necessary Party, the Court Should Dismiss**

**a.    Joinder Is Not Feasible Because ICE Is Immune**

Joinder is not feasible in this context because it is black-letter law that ICE is immune from suit under the doctrine of sovereign immunity.

32

Federal agencies are immune from suit unless Congress has specifically authorized suits against them. "It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (citation modified). To that end, this Court has repeatedly held that ICE is immune from civil suits. *See*, *e.g., Laoye v. United States*, No. 14-5195 (GC) (DEA), 2023 WL 2263670, at *5 (D.N.J. Feb. 28, 2023) ("[F]ederal agencies and entities, like ICE are also immune from suit in civil rights matters, because they have not explicitly waived sovereign immunity."), *reconsideration denied*, No. 14-5195 (GC) (DEA), 2023 WL 4621897 (D.N.J. July 19, 2023); *Reeves v. Hemsley*, No. 18-14061 (JMV/MF), 2019 WL 2560133, at *7 (D.N.J. June 21, 2019) ("The United States—and by extension, ICE—has sovereign immunity except where it consents to be sued.").

Thus, "'[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.'" *Dep't of Army v. Blue Fox, Inc*., 525 U.S. 255, 260 (1999) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). Waivers of sovereign immunity must be "unequivocally expressed" in statutory text, and the waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign. *Id.* at 261. Like any other federal agency, therefore, ICE is

33

protected by sovereign immunity apart from any express statutory waiver. *See, e.g.,*

*Laoye*, 2023 WL 2263670, at \*5; *Reeves*, 2019 WL 2560133, at \*7.

GEO is unaware of any explicit waiver of sovereign immunity for state claims

against ICE seeking forced access to secure federal ICE detention facilities for the

purpose of conducting inspections regarding compliance with local, state and

administrative codes.   In fact, Congress specifically assigned responsibility to

address the conditions of immigration detention to the discretion of DHS and ICE.

*See* 6 U.S.C. § 112(b)(2); 28 U.S.C. § 530C(a)(4); 8 U.S.C. §§ 1226(e), 1231(g).

For the foregoing reasons, ICE is plainly immune from Plaintiff's claims.

### b.    This Action Must Be Dismissed

Under Rule 19(b), when a person who is required to be joined if feasible

cannot be joined, the court must determine whether, in equity and good conscience,

the action should proceed among the existing parties:

> (b) When Joinder Is Not Feasible.   If a person who is required to be
> joined if feasible cannot be joined, the court must determine whether,
> in equity and good conscience, the action should proceed among the
> existing parties or should be dismissed.   The factors for the court to
> consider include:
>
> > (1) the extent to which a judgment rendered in the person's absence
> > might prejudice that person or the existing parties;
> >
> > (2) the extent to which any prejudice could be lessened or avoided
> > by:
> >
> > > (A) protective provisions in the judgment;
> > > (B) shaping the relief; or
> > > (C) other measures;

34

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

The Supreme Court has held that a "case may not proceed when a required-entity sovereign is not amenable to suit." *Republic of Phil. v. Pimentel*, 553 U.S. 851, 866-67 (2008) (citing *Mine Safety Appliances Co. v. Forrestal*, 326 U.S. 371, 373-375 (1945) (dismissing an action where the Under Secretary of the Navy was sued in his official capacity because the Government was a required entity that could not be joined when it withheld consent to be sued)); *Minn. v. United States*, 305 U.S. 382, 386-388 (1939) (dismissing the action for nonjoinder of a required entity where the United States was the owner of the land in question but had not consented to suit). The *Pimentel* Court summarized the primacy of sovereign immunity in the Rule 19(b) analysis and stated: "[t]hese cases instruct us that where sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign." *Pimentel*, 553 U.S. at 867.

Similarly, as other courts have recognized, the potentially dispositive nature of sovereign immunity should be viewed as compelling factor when evaluating the standard under Rule 19(b):

35

> Although Rule 19(b) contemplates balancing the factors, "when the necessary party is immune from suit, there may be 'very little need for balancing Rule 19(b) factors because immunity itself may be viewed as the compelling factor.'" *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1460 (9th Cir. 1994) (quoting *Confederated Tribes* [*of Chehalis Indian Rsrv. v. Lujan*, 928 F.2d 1496, 1499 (9th Cir. 1991)]).  As the district court correctly noted, "virtually all the cases to consider the question appear to dismiss under Rule 19, regardless of whether a remedy is available, if the absent parties are Indian tribes invested with sovereign immunity." (citing *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015 (9th Cir. 2002); *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150 (9th Cir. 2002); *Manybeads v. United States*, 209 F.3d 1164 (9th Cir. 2000); *Clinton v. Babbitt*, 180 F.3d 1081 (9th Cir. 1999); *Kescoli v. Babbitt*, 101 F.3d 1304 (9th Cir. 1996); *McClendon v. United States*, 885 F.2d 627 (9th Cir. 1989).)

*White v. Univ. of Cal.*, 765 F.3d 1010, 1028 (9th Cir. 2014).  The *White* court concluded this "wall of circuit authority" supported dismissal without balancing under Rule 19(b) when the required sovereign party was immune from suit.  *Id.*  For these reasons, no balancing is required under Rule 19(b), and dismissal of Plaintiff's current action is necessary because ICE is a required party and is immune from suit.

Moreover, even if this Court examined each of the factors in Rule 19(b), dismissal would be required.

First, as detailed in Section III.B.1.b *supra*, proceeding without ICE will prejudice both ICE and GEO.  The adequacy of the physical security and conditions of federal detention facilities used for immigration detainees in the custody of ICE involves dominant federal interests with serious foreign policy implications.  Permitting the Department of Health access to the Delaney Hall Facility without

36

prior ICE authorization—and over ICE's explicit denial of access—so it can investigate alleged violations of state and administrative codes would significantly prejudice ICE's dominant federal interests. This risk or prejudice is particularly acute in light of New Jersey's unrelenting opposition to federal immigration enforcement in the state. Similarly, GEO would be prejudiced by proceeding without ICE as ICE controls the requested access, and GEO faces a substantial risk of an injunction mandating actions that would conflict with its contractual obligations to a non-party sovereign. *See* Grimes Decl. ¶¶ 4-7; Ragsdale Decl. ¶¶ 4-5. Consequently, proceeding without ICE would likely force GEO into an untenable position of having to mediate directly conflicting orders from ICE and this Court.

Second, the prejudice to ICE and GEO cannot be avoided by any tailored remedy. The Court, in responding to Plaintiff's claims, must either (1) mandate state access to secure federal facilities and afford the state illusory and unconstitutional oversight and authority to dictate the conditions of federal detention, or (2) deny the same. No tailored remedy is possible that would avoid far-reaching prejudice to ICE and GEO.

Third, a judgment in ICE's absence would not be adequate. As detailed in Section III.B.1.a *supra*, GEO is without authority to provide the requested access to the secure portions of the Delaney Hall Facility that the Department of Health has not yet inspected absent ICE clearance and approval. *See* Grimes Decl. ¶ 7.

37

Accordingly, a judgment against GEO alone would be "hollow . . . relief" that would only spur additional suits. *See Bank of Am. Nat'l Tr.*, 844 F.2d at 1054 n.5 (quoting Fed. R. Civ. P. 19 Advisory Comm. Notes).

Finally, when the required absent party is a sovereign and immune from suit, the lack of an adequate remedy does not militate against dismissal. As observed by the Supreme Court, "[d]ismissal under Rule 19(b) will mean, in some instances, that plaintiffs will be left without a forum for definitive resolution of their claims." *Pimentel*, 553 U.S. at 872. "But," the Court concluded, "that result is contemplated under the doctrine of foreign sovereign immunity." *Id.* The same is true for the sovereign immunity of the United States and its agencies.

Because ICE is a necessary and indispensable party to this suit, while also being immune to suit under the doctrine of sovereign immunity, Plaintiff's claims should be dismissed with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, GEO respectfully requests that the Court dismiss Plaintiff's Complaint for lack of standing under Rule 12(b)(1) or, in the alternative, order that ICE is a necessary party to this action pursuant to Rule 12(b)(7) and Rule 19 of the Federal Rules of Civil Procedure and thereafter dismiss the case with prejudice pursuant to Rule 19(b) of the Federal Rules of Civil Procedure after

38

concluding that joinder of ICE is infeasible due to the doctrine of sovereign immunity.

Dated: June 12, 2026

DAVIS WRIGHT TREMAINE LLP

By: */s/ Geoffrey S. Brounell*
    Geoffrey S. Brounell

1251 Avenue of the Americas, 42nd Floor
New York, NY 10020-1104
geoffreybrounell@dwt.com

*Attorneys for The GEO Group, Inc.*

39